UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



FLETCHER QUILLER,

                      Plaintiff,

-v-

CITY OF NEW YORK et al.,

                      Defendants.

No. 16-cv-3205 (RJS)
ORDER AND MEMORANDUM

RICHARD J. SULLIVAN, District Judge:

Plaintiff Fletcher Quiller brings this action under 42 U.S.C. § 1983 ("Section 1983") against five officers employed by the New York City Department of Correction, alleging excessive use of force and denial of the right to a fair trial. (Doc. No. 1 ("Complaint" or "Compl.").) Now before the Court is Defendants' motion for summary judgment. (Doc. No. 36.) For the reasons stated below, the motion is granted in part and denied in part.

I. BACKGROUND

A. Facts[1]

On April 30, 2013, Plaintiff Fletcher Quiller was arrested by members of the New York City Police department ("NYPD"). (56.1 Stmt. ¶ 7.) At Bronx Central Booking, where Plaintiff was detained prior to arraignment, each of the Defendants was on duty as an employee of the Department of Correction. Specifically, Captain Denise Varona was the ranking officer

---

[1] The following facts are taken from the parties' Local Civil Rule 56.1 Statements (Doc. Nos. 41 ("56.1 Stmt."), 49 ("56.1 Counter-Stmt.")), the affidavits and declarations submitted in connection with the instant motion, and the exhibits attached thereto. Unless otherwise noted, where one party's 56.1 Statement is cited, the other party does not dispute the fact asserted, has offered no admissible evidence to refute that fact, or merely objects to inferences drawn from that fact. In deciding this motion, the Court also considered Defendants' memorandum of law in support of its motion (Doc. No. 39 ("Mem.")), Plaintiff's memorandum of law in opposition to the motion (Doc. No. 51 ("Opp'n")), and Defendants' reply brief (Doc. No. 52 ("Reply")).

responsible for managing officers who themselves supervised inmates. (*Id.* ¶ 21.) Correction Officer ("CO") Nivea Lopez was employed at the Pre-Arraignment 2 Escort section of the Bronx Criminal Court, a position that required her to escort detainees to court or to other locations within the facility. (*Id.* ¶¶ 16, 17.) CO Viola Pugh was assigned to section Pre-Arraignment 2, which required her to maintain the logbook and to open and close the gates to the cells in which arraignment detainees were housed. (*Id.* ¶¶ 19, 20.) CO Stacy Lockhart worked in the "Arsenal" section of the Bronx Criminal Court, where he managed equipment such as keys and radios for other corrections officers. (*Id.* ¶¶ 22, 23.) Finally, CO Roger Montford worked as a Central Booking Escort at the Bronx Criminal Court, where he was tasked with escorting prisoners within the facility, as well as searching prisoners and documenting their pedigree information, as necessary. (*Id.* ¶¶ 23, 24.)

There is no dispute that on May 1, 2013, Plaintiff and Defendants were involved in two separate incidents involving the use of force in the Pre-Arraignment 2 area and the Central Booking area of the Bronx Criminal Court. (*Id.* ¶ 28.) The parties also agree that Defendants Lopez, Pugh, Varona, Lockhart, and Montford were involved in the first incident (*id.* ¶ 28), although they dispute the particulars of what occurred. As to the second incident, Plaintiff claims that CO Montford alone assaulted him, whereas Defendants state that Varona and Lockhart were also present and that the force used was reasonable. (*Compare* 56.1 Counter-Stmt. ¶ 29 with 56.1 Stmt. ¶ 29.)

As a result of these two incidents, Plaintiff filed an Inmate Voluntary Statement Form in which he claimed, among other things, that "approximately 10" correction officers "pummeled [him] with hands and fists," beating and kicking him to the point that he began screaming. (*Id.* ¶ 32.) According to Plaintiff, as the first assault was occurring, he told the officers that he was suffering from broken ribs, but his pleas "only gave [the] officers targets on [his] body to inflict

2

pain." (*Id.* ¶ 33 (quoting Doc. No. 37, Ex. M).) As for the second incident, he claims that "after he managed to escape," one of the COs who had previously assaulted him "locked [him] in a cell alone, and kicked and punched [him] some more until [he] fell on the floor." (*Id.* ¶ 36 (citing Doc. No. 37, Ex. A at ¶¶ 18–19).) Defendants, for their part, do not set forth an alternative narrative in their 56.1 Statement, other than to reference two "use of force incidents," which resulted in the creation of an "Unusual Incident Report" that described two separate altercations between Plaintiff and various correction officers. (*Id.* ¶¶ 28, 29 (citing Doc. No. 37, Ex. I).) Specifically, that document recounts that Plaintiff initiated the first physical altercation when he groped CO Lopez. (Doc. No. 37, Ex. I.) After being subdued, he thereafter initiated a separate altercation when he struck Captain Varona in the chest, after which he was exposed to a chemical agent and eventually subdued by other Defendants. (*Id.*)

Later that day, Plaintiff was admitted to the Emergency Room at Lincoln Medical and Mental Health Center ("Lincoln Medical Center"), where his "chief complaints" were pain to his face, ribs, and pelvis. (56.1 Stmt. ¶¶ 45, 46, 47.) He was diagnosed with "ecchymosis" – bruising – to the left side of his face and nose, but the X-rays were negative for "acute fracture," revealed "no chest wall abnormality," and "no new fracture or soft tissue trauma." (*Id.* ¶¶ 50–53.) In addition, the radiologist observed, "[t]here is no abnormal pelvic soft tissue." (*Id.* ¶ 54.) Later, upon reassessment, medical staff noted that Plaintiff was sitting up comfortably in his bed and did not appear to be in pain. (*Id.* ¶ 56.) Despite asking the treating physician to "do [him] a favor" and to "admit [him] for pain so [he] [could] get arraigned and bail[ed] out of [Lincoln Medical Center] tomorrow morning," Plaintiff was discharged back into the custody of the Department of Correction. (*Id.* ¶¶ 57–59.)

As a result of the Unusual Incident Report generated on May 1, 2013, Plaintiff was re-arrested and charged with Assault in the Third Degree, in violation of New York Penal Law § 120.00(01), and Forcible Touching, in violation of New York Penal Law § 130.52. Three years later, on June 14, 2016, Plaintiff pleaded guilty to Disorderly Conduct, a misdemeanor in violation of New York Penal Law § 240.20(1), in "satisfaction of the charges stemming from his May 1, 2013 arrest." (*Id.* ¶ 31.)

B. Procedural History

On April 29, 2016, Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 against Captain Denise Varona, COs Lopez, Pugh, Lockhart, and Montford, and the City of New York. (Compl. ¶¶ 6, 7.) Plaintiff originally asserted claims for false arrest, First Amendment retaliation, excessive force, denial of the right to a fair trial, and municipal liability. (*Id.* ¶¶ 28, 30, 32, 34, 36.) However, at the initial conference held on February 24, 2017, Plaintiff voluntarily withdrew his claims against the City of New York, and at the premotion conference on November 21, 2017, Plaintiff abandoned his allegations of false arrest and First Amendment retaliation. Thereafter, on January 16, 2018, Defendants Varona, Lopez, Pugh, Lockhart, and Montford moved for summary judgment on Plaintiff's remaining claims of excessive force and denial of the right to a fair trial. Plaintiff opposed the motion, which was fully briefed on March 20, 2018.

II. LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see*

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party "'show[s]' – that is, point[s] out . . . – that there is an absence of evidence [in the record] to support the nonmoving party's [position]," *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

### III. DISCUSSION

Section 1983 provides a civil cause of action for damages against any person who, acting under color of state law, deprives another of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established

5

elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). To prevail on a claim under Section 1983, a plaintiff must demonstrate (1) the deprivation of a right, privilege, or immunity secured by the Constitution or laws of the United States (2) by a person acting under the color of state law. *Id.* The plaintiff must also establish that the defendant was "personally involved in the unconstitutional conduct." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995). Plaintiff claims that he was subjected to excessive force in violation of the Fourteenth Amendment and denied his right to a fair trial in violation of the Sixth Amendment. The Court will address each claim in turn.

A. Excessive Force

"[T]he right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). Pretrial detainees bringing excessive force claims "must show only that the force purposely or knowingly used against [them] was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989).

At bottom, this is a case involving two competing narratives about use-of-force incidents that occurred on May 1, 2013. Plaintiff alleges that "eight to ten" corrections officers brutally assaulted him while he was waiting to be arraigned. (Compl. ¶ 16.) Although Defendants do not set forth their alternative version of the facts in their 56.1 Statement, the Unusual Incident Report and deposition testimony attached to their motion for summary judgment reveals their likely position should this case proceed to trial – namely, that it was Plaintiff who originally initiated the fracas, first by grabbing CO Lopez's buttocks and upper body, and later by striking Captain Varona in the chest. (*See, e.g.*, Doc. No. 37, Ex. I.) These kinds of factual disputes are ordinarily left to a jury.

Defendants nevertheless make two arguments in support of their motion. First, they contend that Plaintiff has not established more than *de minimis* injury, and therefore his claim of excessive force fails as a matter of law. (Mem. at 12.) Second, Defendants ask the Court to discredit Plaintiff's "unreliable" account of what transpired on May 1, 2013. (*Id.* at 16–19.) Neither of these arguments is persuasive.

As for the first, it is true that "[a] *de minimis* use of force will rarely suffice to state a constitutional claim." *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993). But the Supreme Court has cautioned lower courts against giving "decisive weight to the purportedly *de minimis* nature" of a plaintiff's *injuries* when evaluating an excessive force claim. *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). The "core judicial inquiry" is not whether the plaintiff suffered "some arbitrary quantity of injury," but rather whether he suffered a "nontrivial" use of force that "was applied . . . maliciously and sadistically to cause harm." *Id*. (quoting *Hudson v. McMillian*, 503 U.S. 1, 7, 9 (1992)); *see also id*. ("To conclude, as the District Court did here, that the absence of 'some arbitrary quantity of injury' requires automatic dismissal of an excessive force claim improperly bypasses this core inquiry."). Plaintiff has produced medical records establishing that he suffered from bruising to the face following the violent May 1, 2013 incident. (Doc. No. 37, Ex. N.) And although some of the other objective evidence introduced by Defendants may partially discredit Plaintiff's version of the events, that evidence does not conclusively establish as a matter of law that Plaintiff was not subjected to excessive force. *See, e.g., Belile v. Amo*, No. 15-cv-198 (LEK) (DEP), 2016 WL 5107116, at *1 (N.D.N.Y. Sept. 20, 2016).

As to Defendants' second argument, the parties agree that two altercations took place on May 1, 2018, and indeed, the physical evidence is consistent with at least some of Plaintiff's account. Consequently, this is not one of the "rare" cases in which there is *no* objective evidence

whatsoever to support a party's claims other than his own self-serving, "contradictory and incomplete" testimony. *See Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 100, 105 (2d Cir. 2011). Although Defendants are certainly free to highlight the discrepancies between Plaintiff's account of the events in question and the emergency room records, the ultimate determination as to what happened in Central Booking on May 1, 2013 is for the factfinder and not the Court on summary judgment. *Id.* at 106. Accordingly, the Defendants' motion for summary judgment on Plaintiff's excessive force claim is denied.

## B. Denial of the Right to a Fair Trial

Plaintiff's remaining claim is that Defendants "denied Plaintiff the right to a fair trial by [falsely] alleging that he grabbed Officer Nivea's buttocks and that he assault [sic] Captain Varona in violation of his 4, 5th and 6th Amendment rights not to be denied the right to a fair trial." (Compl. ¶ 34.) Although Plaintiff's allegations are barebones, he appears to claim that Defendants provided false information that resulted in his subsequent conviction of Disorderly Conduct. *See* New York Penal Law § 240.20(1). The Second Circuit has restricted fair trial claims like Plaintiff's – those based on "fabrication of information" – to those cases in which an "(1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) and *Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003)).

Defendants moved for summary judgment and set forth two arguments for summary judgment on this claim. (Mem. at 12-22.) Specifically, they argue that (1) Defendants were not investigatory officials, as required to sustain a claim for the denial of his right to a fair trial, and (2) Plaintiff's guilty plea was a superseding cause between any alleged fabrication and Plaintiff's

8

ultimate deprivation of liberty. (Mem. at 12-22.) Plaintiff's opposition brief completely fails to address either of Defendants' arguments on this point, and therefore the Court considers Plaintiff's fair trial claim to be abandoned. *See Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."); *see also Douglas v. Victor Capital Group*, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998) (finding claims alleged in complaint and unaddressed in opposition to summary judgment to have been abandoned); *id.* (collecting cases). Accordingly, the Court grants Defendants' motion on this ground alone.

IV. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED THAT Defendants' motion for summary judgment is granted with respect to Plaintiff's fair trial claim and denied with respect to Plaintiff's excessive force claim. The Clerk is respectfully directed to terminate the motion pending at docket number 61.

IT IS FURTHER ORDERED THAT trial shall commence on Tuesday, October 9, 2018 at 9:30 a.m. in Courtroom 905 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York.

IT IS FURTHER ORDERED THAT by Friday, August 17, 2018, the parties shall jointly submit a Proposed Pretrial Order that includes, in separately numbered paragraphs, the information required by Federal Rule of Civil Procedure 26(a)(3), as well as the following information:

i. The full caption of the action;

ii. The names, addresses (including firm names), and telephone and fax numbers of trial counsel;

iii. A brief statement by Plaintiffs as to the basis of subject-matter jurisdiction and a brief statement by Defendant as to the presence or absence of subject-matter

9

jurisdiction, each of which shall include citations to all authority relied on and relevant facts as to citizenship and jurisdictional amount;

iv. A brief summary by each party of the claims and defenses that the party has asserted that remain to be tried – without recital of evidentiary matters but with citations to all statutes on which the party has relied – and of the claims and defenses that the party has previously asserted that are not to be tried;

v. A statement by each party as to whether the case is to be tried with or without a jury, and the number of trial days needed;

vi. A statement as to whether all parties have consented to a trial of the case by a magistrate judge (without identifying which party or parties have or have not so consented);

vii. Any stipulations of fact or law that have been agreed upon by the parties;

viii. A statement by each party as to the witnesses whose testimony is to be offered in the party's case-in-chief, indicating whether such witnesses will testify in person or by deposition;

ix. A designation by each party of deposition testimony to be offered in the party's case-in-chief, with any cross-designations and objections by any other party;

x. A list by each party of exhibits to be offered in the party's case-in-chief, with an indication as to whether any party objects to any such exhibits and a brief statement of the nature of the objection (*e.g.*, "relevance," "authenticity," "hearsay"); and

xi. A statement of whether the parties consent to less than a unanimous verdict.

IT IS FURTHER ORDERED THAT, in jury cases, the parties shall file with the Proposed Pretrial Order the following submissions:

i. Jointly proposed *voir dire* questions – a copy of which shall be emailed to chambers in a Word version – which shall include the text of any requested question and should consist of a single document and note any areas of disagreement between the parties;

ii. A jointly proposed verdict form – a copy of which shall be emailed to chambers in a Word version – which should consist of a single document and note any areas of disagreement between the parties;

iii. Jointly proposed jury instructions – a copy of which shall be emailed to chambers in a Word version – which shall include the text of any requested instruction and a citation, if relevant, to the authority from which such instruction derives, and which should consist of a single document and note any areas of disagreement between the parties;

iv. Motions addressing any evidentiary or other issues that should be resolved *in limine*; and

v. If a party believes that it would be useful, a pretrial memorandum, not to exceed 10 pages.

IT IS FURTHER ORDERED THAT, in non-jury cases, the parties shall jointly file with the Proposed Pretrial Order the following submissions:

i. Jointly proposed findings of fact and conclusions of law – a copy of which shall be emailed to chambers in a Word version – which should be detailed and note any areas of disagreement between the parties and, for each proposed factual finding, shall include citations to the record;

ii. Motions addressing any evidentiary or other issues that should be resolved *in limine*; and

iii. If a party believes that it would be useful, a pretrial memorandum, not to exceed 10 pages.

IT IS FURTHER ORDERED THAT, in non-jury cases, at the time that the Proposed Pretrial Order is filed, each party shall serve (but not file) the following submissions and shall submit two courtesy copies of these submissions as well as digital copies on CD or DVD discs to chambers:

i. Affidavits – the originals of which shall be marked as exhibits at trial – constituting the direct testimony of each trial witness, except for testimony of an adverse party, a person whose attendance must be compelled by subpoena, or a person for whom a party has requested and from whom the Court has agreed to hear direct testimony during the trial;

ii. All deposition excerpts that will be offered as substantive evidence and, for each, a one-page synopsis of those excerpts (with citations); and

iii. All documentary evidence, which shall be compiled in tabbed binders containing all documentary exhibits organized by exhibit number. If the number of exhibits is so voluminous as to make compliance with this rule impractical, the parties shall contact the Court for guidance.

IT IS FURTHER ORDERED THAT, in non-jury cases, within three business days after the parties submit the above-mentioned affidavits, each party shall submit a list of all affiants whom the party's counsel intends to cross-examine at trial. IT IS FURTHER ORDERED THAT only those witnesses who will be cross-examined need appear at trial.

IT IS FURTHER ORDERED THAT, within one week of the filing of the Proposed Pretrial Order, any party may file the following documents:

    i.      Oppositions to any motions *in limine*; and

    ii.     Oppositions to any legal arguments set forth in a pretrial memorandum.

Finally, IT IS FURTHER ORDERED THAT the parties shall appear for a final pretrial conference on Thursday, October 4, 2018 at 11:30 a.m. to discuss the trial, which, as ordered above, will commence on the morning of October 9, 2018.

SO ORDERED.

Dated:    July 13, 2018  
              New York, New York

                                                        RICHARD J. SULLIVAN  
                                                        UNITED STATES DISTRICT JUDGE